UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| V. | ) | 5:10-CR-5-1-BR |
| | ) | |
| DANIEL AGUIRRE CARRANZA, | ) | |
| | ) | |
| DEFENDANT. | ) | |
| | ) | |

SENTENCING
AUGUST 2, 2010
BEFORE THE HONORABLE W. EARL BRITT
SENIOR U.S. DISTRICT JUDGE

APPEARANCES:

FOR THE GOVERNMENT:

MR. ERIC GOULIAN
ASST. U.S. ATTORNEY
310 NEW BERN AVE.
RALEIGH, NC

FOR THE DEFENDANT:

MR. ANDREW MCCOPPIN
ATTORNEY AT LAW
1250 S.E. MAYNARD RD., SUITE 202
CARY, NC

COURT REPORTER: DONNA J. TOMAWSKI
STENOTYPE WITH COMPUTER AIDED TRANSCRIPTION

AUGUST 2, 2010

(SPANISH INTERPRETER SWORN.)

**THE COURT:** LET THE DEFENDANT BE SWORN.

(DEFENDANT SWORN.)

**THE COURT:** MR. MCCOPPIN, HAVE YOU AND YOUR CLIENT RECEIVED AND HAD AN OPPORTUNITY TO READ AND REVIEW THE PRESENTENCE REPORT?

**MR. McCOPPIN:** YES.

**THE COURT:** MR. CARRANZA, YOU HEARD YOUR LAWYER TELL ME THAT YOU AND HE HAD RECEIVED AND HAD AN OPPORTUNITY TO READ AND REVIEW THIS PRESENTENCE REPORT; IS THAT CORRECT?

**THE DEFENDANT:** YES.

**THE COURT:** ALL RIGHT. YOU MAY HAVE A SEAT.

ALL RIGHT. THE COURT WILL DEAL WITH THE OBJECTIONS SET OUT IN THE ADDENDUM IN THE ORDER LISTED.

THE FIRST OBJECTION IS TO PARAGRAPHS 17, 18 AND 56, DEALING WITH ASSIGNMENT OF CRIMINAL HISTORY POINTS.

MR. MCCOPPIN, I HAVE READ YOUR OBJECTION. I HAVE READ THE PROBATION OFFICE'S RESPONSE. DO YOU DESIRE TO BE HEARD FURTHER ON THAT OBJECTION?

**MR. McCOPPIN:** YES, PLEASE.

**THE COURT:** YOU MAY PROCEED.

**MR. McCOPPIN:** YOUR HONOR, THE ONE POINT FOR CRIMINAL CONVICTION IS IN RELATION TO A DRIVING WHILE

LICENSE REVOKED CASE, THE SORT OF CASE THAT NORMALLY UNDER 4A1.2C, WOULD BE EXCLUDED BUT FOR THE FACT THAT HERE WE HAVE A SENTENCE OF 45 DAYS, GREATER THAN 30, AND PROBATIONARY TERM GREATER THAN A YEAR.

THAT IS THE ONLY SCOREABLE CRIMINAL HISTORY POINT THAT HE HAS. HE WAS PLACED ON PROBATION. PART OF THE CONVICTED CONSPIRACY OCCURRED DURING THAT PROBATION AND SO PROBATION HAS ADDED TWO ADDITIONAL POINTS FOR COMMISSION OF THE INSTANT OFFENSES DURING THAT PERIOD OF PROBATION.

I WOULD SUBMIT THAT THREE CRIMINAL HISTORY POINTS OVERSTATES MR. CARRANZA'S CRIMINAL HISTORY, IN THAT WE HAVE AN OFFENSE THAT BUT FOR A SOMEWHAT LONGER THAN NORMAL STATE COURT SENTENCE, WOULDN'T HAVE BEEN COUNTED IN THE FIRST PLACE. AND THEN MORE POINTS FOR THE COMMISSION OF THIS OFFENSE DURING THAT PERIOD OF PROBATION THAN THE ORIGINAL CONVICTION EVEN WOULD HAVE APPLIED, TWO POINTS VERSUS ONE.

I WOULD SUBMIT THAT BASED UPON THAT, THE COURT CONSIDER A CRIMINAL HISTORY LEVEL I TO BE APPROPRIATE AND APPLY IT HERE. THANK YOU.

**THE COURT:** WELL, IT SOUNDS TO ME LIKE YOU ARE ARGUING FOR A DEPARTURE BASED ON THE OVER-STATEMENT OF CRIMINAL HISTORY. THAT DOES NOT AFFECT THE GUIDELINE CALCULATION. YOU CAN ARGUE THAT AT THE APPROPRIATE TIME OR I'LL TAKE THAT INTO CONSIDERATION.

AS FAR AS THE ASSESSMENT CALCULATION, IT APPEARS TO ME TO BE CORRECT, AND THAT OBJECTION IS OVERRULED.

THE NEXT OBJECTION IS TO PARAGRAPH SEVEN, EIGHT, TEN AND 47 DEALING WITH DRUG QUANTITIES.

AGAIN, I HAVE READ THE PROBATION OFFICER'S SUMMARY OF YOUR OBJECTION AND THE PROBATION OFFICER'S RESPONSE. WOULD YOU LIKE TO ARGUE THAT FURTHER?

**MR. McCOPPIN:** YES, PLEASE.

**THE COURT:** OKAY.

**MR. McCOPPIN:** YOUR HONOR, AS YOU WOULD RECALL, IN THIS PARTICULAR TRIAL THERE WAS A SPECIAL JURY VERDICT IN RELATION TO COCAINE. IT ASKED THE JURY TO DETERMINE WHETHER THERE WERE FEWER THAN 500 GRAMS, MORE THAN 500 BUT FEWER THAN 5 KILOGRAMS, OR GREATER THAN 5 KILOGRAMS OF COCAINE.

IN THIS PARTICULAR CASE, THE JURY CAME BACK WITH A CONVICTION FOR CONSPIRACY OF MORE THAN 500 GRAMS BUT FEWER THAN 5 KILOGRAMS OF COCAINE.

THE GOVERNMENT HAS SUBMITTED, THROUGH THEIR PROFFER TO PROBATION, THAT THE DEFENDANT IS RESPONSIBLE FOR IN EXCESS OF 135 KILOGRAMS OF COCAINE, AND THAT WEIGHT IS, THE LION'S SHARE OF IT, BY FAR, IS WHAT THE CONFIDENTIAL INFORMANT I REFERRED TO IN MY SENTENCING MEMO AND THE WITNESS THAT TESTIFIED BEFORE YOU, MR. LIVENGOOD, ATTRIBUTED TO MR. CARRANZA HERE.

THE JURY HEARD THAT EVIDENCE AND THE JURY DETERMINED IT TO BE UNCREDIBLE BASED ON ITS FINDING THAT FEWER THAN 5 KILOGRAMS WAS THE APPROPRIATE WEIGHT. I REALIZE THAT YOUR HONOR HAS A DIFFERENT STANDARD OF PROOF THAT YOU MIGHT CHOOSE TO APPLY IN THIS PARTICULAR CASE. FOR WHAT WE HAVE HERE IS THE GOVERNMENT ASKING PROBATION TO APPLY AN INCREDIBLY GROSSER QUANTITY OF POWDER COCAINE THAN THE JURY FOUND AT TRIAL.

YOUR HONOR, YOU CLEARLY HAVE THE DISCRETION TO WEIGH THE TESTIMONY AND WHAT'S IN THE PROBATION REPORT, BUT WHAT THE PROBATION REPORT SAYS IS THEY HAVEN'T MADE ANY INDEPENDENT EVALUATION OF WHAT IS OR ISN'T CREDIBLE; THEY HAVE MERELY RELIED ON WHAT THEY HAVE BEEN TOLD BY THE GOVERNMENT.

AS I MENTION IN MY PRESENTENCE REPORT, THERE'S AT LEAST ONE E-MAIL FROM 2007 BETWEEN THE DETECTIVE AND THE U. S. ATTORNEY'S OFFICE WHICH GIVES SOME INDICATION THAT MR. LIVENGOOD MAY NOT HAVE A VERY CLEAR RECOLLECTION OF ANY DRUG QUANTITIES, MUCH LESS THOSE THAT APPLY TO MR. CARRANZA.

IN A CASE LIKE THIS, I WOULD SUBMIT THAT WE BOW TO THE FINDING OF THE JURY WHERE THEY DETERMINED THE DRUG QUANTITY THAT WAS APPLICABLE BASED ON THE SPECIAL JURY VERDICT. THANK YOU.

**THE COURT:** MR. GOULIAN.

**MR. GOULIAN:** YOUR HONOR, IT'S WELL ESTABLISHED THE JURY'S VERDICT IS NOT BINDING ON THE COURT, AND IN FACT IT WOULD BE ERROR FOR THE COURT TO SIMPLY ADOPT THE JURY'S FINDING WITHOUT MAKING AN INDEPENDENT CONSIDERATION OF THE EVIDENCE AND ADDITIONAL INFORMATION PRESENTED UNDER A PREPONDERANCE OF THE EVIDENCE STANDARD.

NOW, THE INFORMATION FROM MR. LIVENGOOD WAS NOT A PROFFER; HE TESTIFIED TO IT. THE QUANTITIES THAT HE TESTIFIED TO WERE CONSISTENT WITH WHAT HE HAD PREVIOUSLY STATED IN HIS INTERVIEWS. THEY WERE CORROBORATED BY THE RECORDED TELEPHONE CONVERSATIONS BETWEEN HIMSELF AND MR. CARRANZA.

JUST TO REMIND THE COURT, THERE WERE A SERIES OF RECORDED TELEPHONE CONVERSATIONS IN WHICH MR. LIVENGOOD WAS ATTEMPTING TO SET UP A MULTI-KILOGRAM COCAINE DEAL, 5 TO 10 KILOGRAMS OF COCAINE. THERE WERE REPEATED CONVERSATIONS REFERRING TO THOSE QUANTITIES.

AND THEN IN THE CONVERSATION ON MAY 13, 2007, MR. CARRANZA TELLS MR. LIVENGOOD THAT HE HAD RECEIVED 40 KILOGRAMS OF COCAINE.

NOW THAT'S NOT PART OF THE WEIGHT THAT'S IN THE PRESENTENCE REPORT BUT IT'S STRONG CORROBORATION FOR THE INFORMATION PROVIDED BY MR. LIVENGOOD. EVEN MORE SIGNIFICANTLY IS THE FACT THAT MR. CARRANZA, IN THAT CONVERSATION, REFERS TO HIS BROTHER HAVING BEEN RECENTLY

ARRESTED AND THAT HE LOST A LOT OF MONEY FROM THAT. THAT WAS THE SEPARATE -- THAT WAS THE ARREST OF HIS BROTHER ABATO (PHONETIC) CARRANZA, THAT MR. LIVENGOOD HAD SET UP SEPARATELY, AND MR. CARRANZA IS MAKING REFERENCE TO THIS FOUR DAYS LATER.

SO THAT JUST SHOWS IT WAS, IN FACT, DANIEL CARRANZA THAT MR. LIVENGOOD WAS SPEAKING WITH.

MR. LIVENGOOD'S INFORMATION WAS ALSO CORROBORATED BY SOME INFORMATION THAT THE JURY WAS NOT ABLE TO HEAR, AND THAT IS MR. CARRANZA'S CONFESSION TO THE LEE COUNTY DEPUTY. AS YOU WILL RECALL, I PUT THAT DEPUTY ON THE STAND AND THERE WAS A HEARSAY OBJECTION BASED ON THE FACT IT CAME THROUGH AN INTERPRETER.

AND, YOUR HONOR, HAVING DONE SOME ADDITIONAL RESEARCH, AND I HAVE SOME CASES TO SUPPORT IT, THAT STATEMENTS THROUGH AN INTERPRETER ARE NOT CONSIDERED TO BE HEARSAY UNLESS THERE'S SOME REASON TO THINK THAT THE INTERPRETER MAY NOT HAVE BEEN INTERPRETING ACCURATELY. IN THIS CASE, THE INTERPRETER WORKED FOR MR. CARRANZA'S STATE ATTORNEY AT THE TIME AND SHE WAS THERE ESSENTIALLY TO ASSIST WITH HIS COOPERATION.

IN THAT DEBRIEF, AND I HAVE THE DEPUTY HERE TO TESTIFY TO IT, IF NECESSARY, MR. CARRANZA SAID HE HAD BEEN SELLING COCAINE SINCE 2006 AND THAT HE HAD SOLD ONE-AND-A-QUARTER KILOGRAMS OF COCAINE TO THE INFORMANT

THAT HAD BEEN USED TO SET HIM UP IN LEE COUNTY. SO THAT WAS JUST THAT ONE INFORMANT, AND HE WAS ARRESTED ATTEMPTING TO DELIVER A QUARTER KILOGRAM OF COCAINE TO THAT INFORMANT.

SO THAT'S ADDITIONAL CORROBORATION FOR WHAT MR. LIVENGOOD TESTIFIED AND THE JURY DID NOT HEAR ABOUT MR. CARRANZA'S CONFESSION. I NOTE THAT THE CASE BEGAN WITH MR. -- OR THE INVESTIGATION BEGAN WITH MR. CARRANZA'S ARREST IN 2005 IN WARREN COUNTY, AGAIN WHEN HE HAD DELIVERED A QUARTER KILOGRAM OF COCAINE TO SOME OTHER INDIVIDUALS AND THEN HE WAS ARRESTED SHORTLY AFTER THAT WITH ABOUT 50 GRAMS ADDITIONAL, AND A GUN.

SO, YOUR HONOR, WE HAVE -- MY POINT IS SIMPLY THAT MR. LIVENGOOD'S TESTIMONY IS SUPPORTED BY EXTENSIVE CORROBORATION FROM THE DRUG SEIZURES, FROM HIS OWN CONFESSION, AND FROM THE RECORDED TELEPHONE CONVERSATIONS. THE INFORMATION IS RELIABLE AND I ASK THE COURT ADOPT THE FINDINGS IN THE PSR.

**THE COURT:** THAT OBJECTION IS OVERRULED.

THE THIRD OBJECTION IS TO PARAGRAPH 48. THE DEFENDANT OBJECTS TO RECEIVING A TWO-LEVEL ENHANCEMENT FOR POSSESSING A DANGEROUS WEAPON.

YOU WANT TO BE HEARD FURTHER ON THAT, MR. MCCOPPIN?

**MR. McCOPPIN:** NO, YOUR HONOR. WE MAINTAIN THE OBJECTION BUT FEEL THAT IT'S ADEQUATELY EXPRESSED IN THE

PROBATION REPORT.

**THE COURT:** ALL RIGHT. THAT OBJECTION IS OVERRULED.

FOURTH OBJECTION IS TO PARAGRAPH 50, 3-LEVEL ENHANCEMENT FOR BEING A SUPERVISOR OR MANAGER.

YOU WANT TO BE HEARD FURTHER ON THAT?

**MR. McCOPPIN:** YES, YOUR HONOR, BRIEFLY.

AT TRIAL THERE WAS WHAT APPEARED TO BE CONFLICTING TESTIMONY ABOUT WHO WAS RELATED TO WHOM, AS FAR AS THE THREE CARRANZA BROTHERS AND AS FAR AS WHATEVER DRUG TRANSACTIONS THEY MAY OR MAY NOT HAVE ENGAGED IN TOGETHER.

THERE DID NOT APPEAR TO BE ANY SORT OF ORGANIZED SCHEME, AS FAR AS PARTNERSHIPS OR CO-WORKING ARRANGEMENTS THAT ROSE TO THE LEVEL OF FIVE OR MORE PARTICIPANTS. IT SEEMED TO BE MORE LOCAL OR A SMALLER GROUP THAN IS PRESENTED HERE IN THE PRESENTENCE REPORT BASED ON THE EVIDENCE AT TRIAL, AND FOR THOSE REASONS I MAINTAIN THE OBJECTION, YOUR HONOR.

**THE COURT:** MR. GOULIAN.

**MR. GOULIAN:** YOUR HONOR, I WOULD AGREE THAT GIVEN THE LENGTHY PERIOD OF TIME OF THE CHARGED CONSPIRACY, THAT THE FIVE PARTICIPANTS MAY NOT BE CORRECT. I WOULD HAVE NO OBJECTION TO A TWO-LEVEL ENHANCEMENT FOR THE MANAGER.

**THE COURT:** ALL RIGHT. THAT OBJECTION IS

SUSTAINED.

ALL RIGHT. OBJECTION FIVE IS TO PARAGRAPH 54, NOT RECEIVING THE TWO-LEVEL REDUCTION FOR ACCEPTANCE OF RESPONSIBILITY.

YOU WANT TO BE HEARD FURTHER?

**MR. McCOPPIN:** YES, PLEASE.

YOUR HONOR, THIS CASE WAS A BIT UNUSUAL, AT LEAST FROM MY PERSPECTIVE, IN THAT MR. CARRANZA FREELY ADMITTED GUILT TO THOSE OFFENSES THAT HE BELIEVED HIMSELF TO BE GUILTY OF; IN THIS CASE THE SALE OF THE DRUG QUANTITY RELATED TO HIS 2005 ARREST. THAT COMPRISED COUNT TWO OF THE INDICTMENT IN THIS CASE, AND MR. CARRANZA, IN FACT, PLED GUILTY TO THAT BEFORE THE JURY TRIAL EVEN BEGAN.

IF YOU WILL RECALL, AT TRIAL I DIDN'T ASK ANY QUESTIONS OF ANY OFFICERS RELATED TO THE 22005 ARREST.

SIMILARLY, WHEN MR. CARRANZA WAS LATER ARRESTED IN 2009, THE ONLY QUESTIONS THAT I ASKED THAT DETECTIVE WERE IN RELATION TO THE SUBSTANTIAL ASSISTANCE THAT MR. CARRANZA PROVIDED IN RELATION TO THAT 2009 ARREST.

MR. CARRANZA, IN THE MOST OBVIOUS WAY HE COULD, PLED GUILTY TO THOSE OFFENSES HE BELIEVED HIMSELF TO BE GUILTY OF AND GRANTED ME PERMISSION TO CONCEDE HIS PARTICIPATION IN THE 2009 OFFENSES, WHICH I DID BEFORE THE JURY.

THE ISSUE AT HAND WAS THE TREMENDOUS DRUG QUANTITY WEIGHT THAT THE GOVERNMENT'S WITNESS, MR. LIVENGOOD,

PLACED ON MR. CARRANZA. IN A LARGE PART OF THE TIME, MR. CARRANZA CONTENDS HE WAS OUT OF THE COUNTRY ENTIRELY.

FOR THOSE REASONS, I WOULD SUBMIT THAT MR. CARRANZA HAS ADMITTED HIS GUILT TO THE EXTENT THAT HE CAN WHILE FULFILLING HIS REQUIREMENT THAT HE HONESTLY CONVERSE WITH THE COURT. I ASK THAT YOU ALLOW THAT MOTION.

**THE COURT:** MR. GOULIAN.

**MR. GOULIAN:** YOUR HONOR, THE GUIDELINES MAKE CLEAR THAT THE ADJUSTMENT FOR ACCEPTANCE OF RESPONSIBILITY IS NOT INTENDED TO APPLY WHEN THE DEFENDANT PUTS THE GOVERNMENT TO ITS BURDEN OF PROOF AT TRIAL. THE GOVERNMENT HAD TO GO TO TRIAL IN ORDER TO CONVICT HIM OF THE CONSPIRACY CHARGE. HE DID NOT PLEAD GUILTY TO IT, HE DID NOT ACCEPT RESPONSIBILITY FOR IT, SO THIS ADJUSTMENT WOULD NOT BE APPROPRIATE.

**THE COURT:** I THINK THE GUIDELINES ARE PRETTY CLEAR IN THAT RESPECT. OVERRULED.

RECALCULATE, MR. PROBATION OFFICER.

**PROBATION OFFICER:** YOUR HONOR, THE NEW GUIDELINE RANGE IS 324 TO 405-MONTHS.

**THE COURT:** WAIT A MINUTE. DOES THAT AFFECT TOTAL OFFENSE LEVEL?

**PROBATION OFFICER:** THE TOTAL OFFENSE LEVEL IS 40, IN LIGHT OF THE SUPERVISORY ROLE ENHANCEMENT ADJUSTMENT. THE FINE RANGE IS THE SAME.

**THE COURT:** WAIT A MINUTE NOW. TOTAL OFFENSE LEVEL IS 40. CRIMINAL HISTORY CATEGORY IS II. CUSTODY RANGE IS?

**PROBATION OFFICER:** 324 TO 405-MONTHS. AND THE FINE RANGE IS THE SAME.

**THE COURT:** AND COUNT TWO WOULD, OF COURSE, REMAIN THE SAME. SUPERVISED RELEASE REMAIN THE SAME?

**PROBATION OFFICER:** YES, SIR.

**THE COURT:** ALL RIGHT.

THE COURT ADOPTS THE FACTUAL FINDINGS AND THE GUIDELINE APPLICATION IN THE PRESENTENCE REPORT, WITH THE EXCEPTION NOTED, AND DETERMINES THAT THE TOTAL OFFENSE LEVEL IS 40. THE CRIMINAL HISTORY CATEGORY IS II. THE IMPRISONMENT RANGE IS 324 TO 405-MONTHS ON COUNT ONE AND 240-MONTHS ON COUNT TWO. SUPERVISED RELEASE IS FOUR TO FIVE YEARS. FINE RANGE IS 25,000 TO $3 MILLION. RESTITUTION IS NOT AT ISSUE. THERE'S A $200 SPECIAL ASSESSMENT.

ARE THERE OBJECTIONS BY EITHER COUNSEL TO THE COMPUTATION?

**MR. GOULIAN:** NO, YOUR HONOR.

**MR. McCOPPIN:** NONE BASED ON YOUR RULINGS, YOUR HONOR.

**THE COURT:** ALL RIGHT, MR. MCCOPPIN, BE GLAD TO HEAR FROM YOU WITH REGARD TO AN APPROPRIATE SENTENCE.

**MR. McCOPPIN:** YOUR HONOR, I WOULD SUBMIT AN APPROPRIATE SENTENCE IN THIS CASE IS IN THE 15-YEAR RANGE FOR THE FOLLOWING REASONS.

FIRST OF ALL, I ASK YOU TO TAKE INTO CONSIDERATION THE DEFENDANT'S CRIMINAL HISTORY. THIS MAY BE A MORE APPROPRIATE PLACE TO EXPRESS IT TO YOU AND I ASK YOU TO INCORPORATE WHAT I PREVIOUSLY STATED HERE NOW.

WE HAVE A PERSON WHO, CHARGED WITH DRIVING WHILE LICENSE REVOKED, IS ASSIGNED THREE CRIMINAL HISTORY POINTS. I WOULD SUBMIT THAT THAT OVERREPRESENTS THE CRIMINAL HISTORY AND THAT APPLYING CATEGORY I WOULD BE MORE APPROPRIATE UNDER THESE CIRCUMSTANCES.

AS TO THE DEFENDANT'S FAMILY SITUATION, HE'S BEEN MARRIED FOR WELL OVER 15 YEARS. HE HAS SIX CHILDREN. I NOTE THAT PARAGRAPHS 31 THROUGH 44 OF THE PRESENTENCE REPORT INDICATE A SUBSTANTIAL AND VARIED WORK HISTORY IN VARIOUS SORTS OF PHYSICAL LABOR THROUGHOUT HIS ADULT LIFE.

HE DOESN'T APPEAR TO BE THE DRUG DEALER THAT WE'RE USED TO SEEING WITH NO OTHER EMPLOYMENT OR SOURCE OF INCOME. HERE WE HAVE A FAMILY MAN WHO HAS CLEARLY MADE SOME POOR CHOICES IN RELATION TO SUBSTANCE ABUSE OR DRUG SALES. BUT ACCORDING TO THE PRESENTENCE REPORT AND TO MR. CARRANZA'S STATEMENTS, HE SUPPORTS HIS FAMILY THROUGH HIS OWN PHYSICAL LABOR.

I ALSO SUBMIT THAT IT WOULD BE APPROPRIATE TO EITHER

DEPART OR VARY DOWNWARD BASED ON THE SUBSTANTIAL ASSISTANCE THAT YOU HEARD TESTIFIED TO FROM THE WITNESS STAND IN THE TRIAL OF THIS CASE.

IN THE 2009 CASE, THE DETECTIVE WHO MADE THAT ARREST SPOKE WITH MR. CARRANZA. MR. CARRANZA IDENTIFIED TWO LOCATIONS, ONE WHERE HE OBTAINED THE COCAINE THAT HE WAS TO DELIVER TO THE BUYER; AND SECONDLY, THE HOUSE WHERE HE WAS TO TAKE THE PROCEEDS OF THIS SALE TO. AS I RECALL, THE SECOND HOUSE THAT WAS IDENTIFIED WAS LATER SEARCHED WITH A WARRANT, A SIZABLE AMOUNT OF DRUGS AND MONEY WAS SEIZED.

SO IN A CASE WHERE MR. CARRANZA COULD HAVE PLED GUILTY BASED ON SOME SORT OF AGREEMENT AS TO DRUG WEIGHT, I WOULD SUBMIT THAT HE VERY LIKELY WOULD HAVE RECEIVED SOME SORT OF DOWNWARD MOTION BY THE GOVERNMENT. MR. LIVENGOOD RECEIVED IT, MR. CARRANZA'S BROTHER RECEIVED IT, AND I WOULD SUBMIT THAT DANIEL HERE WOULD HAVE RECEIVED IT TOO, BUT FOR THE ISSUE OF HONESTLY ADMITTING HIS GUILT WHEN THE GOVERNMENT'S MEASURE OF DRUG WEIGHT IS SO MUCH GREATER THAN MR. CARRANZA KNOWS HE'S SOLD OVER THE YEARS.

FOR THOSE REASONS, THE FAMILY HISTORY, THE WORK HISTORY, THE SUBSTANTIAL ASSISTANCE, THE OVERREPRESENTED CRIMINAL HISTORY, ALL OF THOSE FACTORS PLAY INTO 3553 RATHER CLEARLY.

REFLECTING THE SERIOUSNESS OF THE OFFENSE. FOR SOMEONE THAT HAS NO SERIOUS CONVICTION EVER, A SENTENCE IN THE 15-YEAR RANGE WOULD SEEM QUITE APPROPRIATE AS A DETERRENCE, AS A PROTECTION FOR THE PUBLIC, WHEN COMBINED WITH THE FACT THAT UPON MR. CARRANZA'S RELEASE, IT IS VERY CLEAR HE WILL BE DEPORTED FROM THE COUNTRY. SHOULD HE CHOOSE TO RE-ENTER, HE WOULD BE SUBJECT TO VERY SEVERE PENALTIES. I EXPLAINED THIS TO HIM; HE KNOWS THAT.

I DON'T EXPECT ANY COURT IN THE UNITED STATES WILL EVER SEE MR. CARRANZA AGAIN. THE QUESTION IS, IS HE RELEASED AT A TIME WHERE HE COULD STILL KNOW HIS CHILDREN OR NOT?

THANK YOU.

**THE COURT:** MR. CARRANZA, ANYTHING YOU WANT TO SAY BEFORE I PASS SENTENCE?

**THE DEFENDANT:** FIRST OFF, I WOULD LIKE TO ASK FOR YOUR FORGIVENESS, THE FORGIVENESS OF THE U. S. ATTORNEY AND OF THE COURT. I ASK YOU JUST GIVE ME A JUST SENTENCE BECAUSE I HAVE CHILDREN OF MINOR AGE THAT ARE WAITING FOR ME AT HOME. THAT'S ALL.

**THE COURT:** YOU MAY HAVE A SEAT. MR. GOULIAN.

**MR. GOULIAN:** YOUR HONOR, THE GOVERNMENT ASKS FOR A GUIDELINE SENTENCE WHICH I SUBMIT IS APPROPRIATE GIVEN THE EXTENDED PERIOD OF TIME THAT MR. CARRANZA WAS SELLING COCAINE.

HE WAS ARRESTED AGAIN IN WARREN COUNTY IN 2005, AND UNFORTUNATELY THAT WAS NOT A WAKE-UP CALL FOR HIM. HE SKIPPED OUT ON HIS BOND AND CONTINUED SELLING.

THERE HAVE BEEN SEVERAL REFERENCES TO MR. CARRANZA'S FAMILY, AND THAT DID COME OUT AT THE TRIAL, YOUR HONOR, IN CONNECTION WITH HIS ARREST IN LEE COUNTY LAST YEAR WHEN HE SHOWED UP AT THE INFORMANT'S HOUSE TO DELIVER A QUARTER KILOGRAM OF COCAINE. HE SHOWED UP IN A MINIVAN AND THE OFFICERS COULD SEE THAT THERE WERE OTHER PEOPLE IN THAT MINIVAN AND THERE WERE GUNS POINTED AT IT AND THERE WAS A LOT OF COMMOTION GOING ON INSIDE, AND IT TURNED OUT TO BE HIS CHILDREN THAT HE BROUGHT TO THE DRUG DEAL. SO, YOU KNOW, I DON'T DOUBT THAT HE WAS SELLING DRUGS TO SUPPORT HIS FAMILY BUT HE ALSO PUT THEM AT RISK AS WELL, AT LEAST ON THAT OCCASION.

YOUR HONOR, GIVEN THE LONGSTANDING DRUG DEALING HERE AND THE QUANTITIES INVOLVED, I THINK A GUIDELINE SENTENCE IS APPROPRIATE.

**THE COURT:** MR. PROBATION OFFICER.

(BENCH CONFERENCE HELD WITH THE PROBATION OFFICER OFF THE RECORD.)

**THE COURT:** ALL RIGHT. THE COURT FINDS THAT THE DEFENDANT'S CRIMINAL HISTORY CATEGORY, AS SET FORTH IN THE PRESENTENCE REPORT, OVERSTATES THE DEFENDANT'S TRUE CRIMINAL HISTORY AND THEREFORE DEPARTS DOWNWARDLY TO

CRIMINAL HISTORY CATEGORY I, WHICH RESULTS IN A GUIDELINE IMPRISONMENT RANGE OF 292 TO 365-MONTHS. ALL OTHER ASPECTS OF THE RANGE -- OF THE GUIDELINE RANGE REMAINING THE SAME.

PURSUANT TO THE SENTENCING REFORM ACT OF 1984 AND IN ACCORDANCE WITH THE SUPREME COURT DECISION OF *UNITED STATES AGAINST BOOKER*, IT IS THE JUDGMENT OF THE COURT THAT THE DEFENDANT, DANIEL AGUIRRE CARRANZA, IS COMMITTED TO THE CUSTODY OF THE BUREAU OF PRISONS FOR A TERM OF 292-MONTHS ON COUNT ONE AND A TERM OF 240-MONTHS ON COUNT TWO, TO BE SERVED CONCURRENTLY.

UPON RELEASE FROM IMPRISONMENT, THE DEFENDANT SHALL BE PLACED ON SUPERVISED RELEASE FOR A TERM OF FIVE YEARS. THIS TERM CONSISTS OF A TERM OF FIVE YEARS ON COUNT ONE AND A TERM OF THREE YEARS ON COUNT TWO, TO RUN CONCURRENTLY.

WITHIN 72 HOURS OF RELEASE FROM THE CUSTODY OF THE BUREAU OF PRISONS, THE DEFENDANT SHALL REPORT IN PERSON TO THE PROBATION OFFICE IN THE DISTRICT TO WHICH HE'S RELEASED. WHILE ON SUPERVISED RELEASE, HE SHALL NOT COMMIT ANOTHER FEDERAL, STATE, OR LOCAL CRIME; HE SHALL NOT ILLEGALLY POSSESS A CONTROLLED SUBSTANCE; HE SHALL NOT POSSESS A FIREARM OR DESTRUCTIVE DEVICE; HE SHALL COMPLY WITH THE STANDARD CONDITIONS THAT HAVE BEEN ADOPTED BY THE COURT AND THE FOLLOWING ADDITIONAL CONDITIONS:

UPON COMPLETION OF THE TERM OF IMPRISONMENT, THE DEFENDANT IS TO BE SURRENDERED TO A DULY AUTHORIZED IMMIGRATION OFFICIAL FOR DEPORTATION, IN ACCORDANCE WITH ESTABLISHED PROCEDURES PROVIDED BY THE IMMIGRATION AND NATURALIZATION ACT. AS A FURTHER CONDITION OF SUPERVISED RELEASE, IF ORDERED DEPORTED, THE DEFENDANT SHALL REMAIN OUTSIDE OF THE UNITED STATES.

THE DEFENDANT SHALL PARTICIPATE AS DIRECTED IN A PROGRAM APPROVED BY THE PROBATION OFFICE FOR THE TREATMENT OF NARCOTIC ADDICTION, DRUG DEPENDENCY, OR ALCOHOL DEPENDENCY, WHICH WILL INCLUDE URINALYSIS TESTING OR OTHER DRUG DETECTION MEASURES, AND MAY REQUIRE RESIDENCE OR PARTICIPATION IN A RESIDENTIAL TREATMENT FACILITY.

HE SHALL CONSENT TO WARRANTLESS SEARCH BY THE U.S. PROBATION OFFICER OR, AT THE REQUEST OF THE PROBATION OFFICER, ANY OTHER LAW ENFORCEMENT OFFICER OF HIS PERSON AND PREMISES, INCLUDING ANY VEHICLE, TO DETERMINE COMPLIANCE WITH THE CONDITIONS OF THIS JUDGMENT.

HE SHALL COOPERATE IN THE COLLECTION OF DNA, AS DIRECTED BY THE PROBATION OFFICE.

FURTHER ORDERED HE PAY THE UNITED STATES A SPECIAL ASSESSMENT OF $200, DUE IMMEDIATELY.

THE COURT FINDS THAT THE DEFENDANT DOES NOT HAVE THE ABILITY TO PAY A FINE IN ADDITION TO PROVIDING FINANCIAL SUPPORT TO HIS DEPENDENTS, SO NONE IS IMPOSED.

IT'S ADJUDGED, PURSUANT TO 21 U.S.C. SECTION 862, THE DEFENDANT SHALL BE INELIGIBLE FOR ALL FEDERAL BENEFITS FOR A PERIOD OF FIVE YEARS BEGINNING THIS DATE.

MR. CARRANZA, FROM THE SENTENCE I HAVE JUST IMPOSED, YOU HAVE A RIGHT TO APPEAL TO THE UNITED STATES COURT OF APPEALS FOR THE 4TH CIRCUIT. IF YOU CAN NOT AFFORD COUNSEL, COUNSEL WILL BE APPOINTED FOR YOU.

MR. MARSHAL, HE'S IN YOUR CUSTODY.

END OF TRANSCRIPT

CERTIFICATE

THIS IS TO CERTIFY THAT THE FOREGOING TRANSCRIPT OF PROCEEDINGS TAKEN AT THE CRIMINAL SESSION OF UNITED STATES DISTRICT COURT IS A TRUE AND ACCURATE TRANSCRIPTION OF THE PROCEEDINGS TAKEN BY ME IN MACHINE SHORTHAND AND TRANSCRIBED BY COMPUTER UNDER MY SUPERVISION.

THIS THE 21ST DAY OF OCTOBER, 2010.

/S/ DONNA J. TOMAWSKI

DONNA J. TOMAWSKI
OFFICIAL COURT REPORTER